UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MATTHEW RABIDEAU, an individual, | Case No. 1:24-cv-00369-DKG |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| KRAFT HEINZ FOODS COMPANY, a Pennsylvania limited liability company, | |
| Defendant. | |

## INTRODUCTION

Before the Court is Defendant's Motion for Summary Judgment. (Dkt. 21). The motion is fully briefed and ripe for the Court's consideration.[1] A hearing on the motion was conducted on September 25, 2025. Having carefully considered the arguments and submissions of the parties and the entire record herein, the Court finds as follows.

## BACKGROUND[2]

### 1.    Factual Allegations

Plaintiff, Matthew Rabideau, signed his offer letter from Defendant, Kraft Heinz Foods Company, on October 11, 2022, accepting a position as an Associate Director of

---

[1] The parties have consented to proceed before a United States Magistrate Judge in this matter pursuant to 28 U.S.C. § 636(c)(1) and Local Civil Rule 72.1(a)(1). (Dkt. 12).

[2] Consistent with the standard on summary judgment, the factual background is written to reflect that all evidence in the record is construed in a light most favorable to the non-moving party, who is also given the benefit of all reasonable inferences which can be drawn from that evidence.

**MEMORANDUM DECISION AND ORDER - 1**

the IT department. The offer letter expressly defines Plaintiff's employment as at-will, stating:

> [T]his letter is not intended to be and should not be construed to be a contract or offer of employment for any specific term. By signing below you acknowledge and agree that your employment with the Company is and at all times shall be 'at will,' meaning that it may be terminated by either you or the Company at any time, with or without cause or notice.

(Dkt. 1-6 at 4). The position required Plaintiff to relocate from Idaho to Chicago, Illinois by July 2023. On November 7, 2022, Plaintiff began working remotely from Idaho.

Plaintiff initially reported to Jeff O'Gradney, former Vice President of IT Supply Chain for Defendant. In late January 2023, O'Gradney informed Plaintiff that the IT department would be undergoing restructuring, internally referred to as "IT2025." Under IT2025, some employees' jobs were eliminated, while other employees changed positions or were assigned new supervisors.

Hayden Kornblut was the HR Business Partner assigned to the IT department through the IT2025 restructuring. Kornblut prepared scripts to be used by supervisors communicating with employees affected by the reorganization and kept documentation of how positions were affected by the restructuring. Kornblut's documentation listed Plaintiff as remaining employed in his same position and indicated his new supervisor would be Silvano Lago.

In February 2023, Plaintiff met with O'Gradney one-on-one to discuss the impact IT2025 would have on his position. The parties do not dispute that Plaintiff brought his concerns about job security to O'Gradney during the meeting. Plaintiff claims that during

**MEMORANDUM DECISION AND ORDER - 2**

this meeting, O'Gradney made oral statements that modified the at-will nature of Plaintiff's employment by implying a limitation on Defendant's ability to terminate Plaintiff in relation to IT2025. During this meeting, O'Gradney largely followed the script created for the employees remaining employed through IT2025, rather than the script for employees whose positions were eliminated as part of IT2025. To that end, O'Gradney stated words to the effect that Plaintiff's position would continue to exist through IT2025 and that nothing would change regarding Plaintiff's day-to-day job responsibilities, except that he would report to Silvano Lago moving forward and he would have one new direct report, but that his job would not otherwise be adversely impacted by IT2025. Plaintiff asserts that he would not have continued to work for Defendant or moved forward with his relocation to Chicago absent these assurances by O'Gradney.

Plaintiff and Lago began meeting one-on-one in February 2023 in connection with the supervisorial transition. The transition was official in early March 2023. Lago documented his one-on-one meetings with Plaintiff using spreadsheets that identified Plaintiff's projects and Lago's expectations for Plaintiff to complete the projects. On the "Lago Concerns Spreadsheet," Lago documented concerns about Plaintiff's performance, including: Plaintiff's failure to complete certain action items, Lago completing certain tasks himself, Plaintiff's failure to effectively partner with his main business partner, Diego Fonseca, and complaints received from Fonseca regarding Plaintiff's performance. Lago shared the "Lago Concerns Spreadsheet" with Kornblut on March 21, 2023, in an

**MEMORANDUM DECISION AND ORDER - 3**

email regarding the termination of Plaintiff.

On April 12, 2023, Plaintiff was terminated during a call with Lago and Kornblut. The termination letter following the call stated that Plaintiff was being terminated for poor performance. Plaintiff's termination occurred on the same day that Plaintiff and his family moved to Chicago, after selling their Idaho home pursuant to Plaintiff's relocation agreement.[3] The parties dispute whether Plaintiff was actually terminated for poor performance, or as Plaintiff asserts, in connection with IT2025.

After being terminated, Plaintiff filed for unemployment with the Idaho Department of Labor. The Idaho Department of Labor records indicate Plaintiff was discharged for unsatisfactory work performance.

Plaintiff's position with Defendant was filled on August 14, 2023. Defendant claims that the individual who ultimately replaced Plaintiff began working in the position just after Plaintiff's termination in April 2023, as an independent contractor, and was then officially hired on August 14, 2023. Plaintiff asserts the position was left vacant until August 14, 2023, and that the four month vacancy evidences that his position was impacted by IT2025.

## 2.    Procedural History

Plaintiff initiated this lawsuit on July 22, 2024, by filing a Complaint in the Fourth Judicial District in and for Ada County, Idaho, alleging the following three common law

---

[3] It is unclear from the record the date that Plaintiff sold his Idaho home.

**MEMORANDUM DECISION AND ORDER - 4**

causes of action:

Count One: Breach of Contract – Wrongful Termination.

Count Two: Breach of the Implied Covenant of Good Faith and Fair Dealing.

Count Three: Promissory Estoppel.

(Dkt. 1-2). On August 14, 2024, Defendant filed a notice of removal to this Court on the basis of diversity jurisdiction. (Dkt. 1). On September 5, 2024, Defendant filed its Answer to the Complaint, asserting eleven affirmative defenses. (Dkt. 9). On June 3, 2025, Defendant filed the instant motion for summary judgment on all of Plaintiff's claims. (Dkt. 21).

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

**MEMORANDUM DECISION AND ORDER - 5**

248–49 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. There must be a *genuine* dispute as to a *material* fact. *Id.* at 248 (italics in original).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact and that summary judgment is proper as a matter of law. *Celotex*, 477 U.S. at 323. If the movant meets its burden, the burden shifts to the nonmoving party to produce specific evidence of a genuine dispute of material fact supporting its claim or defense. *Sonner v. Schwabe N. Am., Inc*., 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). To defeat a motion for summary judgment, the respondent cannot rely on an unsworn affidavit or the pleadings; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that preclude summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

In considering a motion for summary judgment, the Court must consider the facts in the light most favorable to the non-moving party, unless the non-moving party's version of those facts is "blatantly contradicted by the record." *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary

**MEMORANDUM DECISION AND ORDER - 6**

judgment."). The Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1209 (9th Cir. 1988). Similarly, "mere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir.1996) (citing *Witherow v. Paff*, 52 F.3d 264, 266 (9th Cir.1995)).

The moving party is entitled to summary judgment when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23 ("[T]here can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

## DISCUSSION

## 1.    Claim One: Breach of Contract – Wrongful Termination

Plaintiff's first claim for breach of contract alleges that O'Gradney's oral statements during the February 2023 meeting modified Plaintiff's at will-employment, by ensuring his job would not be adversely impacted by IT2025. Plaintiff argues Defendant breached the implied-in-fact contract by firing Plaintiff in connection with IT2025.

A claim for breach of contract has four elements: "(a) the existence of the contract, (b) the breach of the contract, (c) the breach caused damages, and (d) the amount of those damages." *Mosell Equities, LLC v. Berryhill & Co.*, 297 P.3d 232, 241 (Idaho 2013).

On this motion for summary judgment, Defendant argues there is no genuine

**MEMORANDUM DECISION AND ORDER - 7**

dispute of material fact that Plaintiff's employment was always at-will, without modification, and that even if the Court finds there was an implied-in-fact modification, there was no breach. Plaintiff argues there is a genuine dispute regarding both an implied-in-fact contract modification and a breach of such a modification. The Court will address each in turn below.

### A.    Modification of Plaintiff's At-Will Employment

A contract is "a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." Restatement (Second) of Contracts § 1 (1981). A promise is "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Id.*, § 2. A promise can be "either oral or written, or may be inferred wholly or partly from conduct." *Id.*, § 4.

In Idaho, unless an employee is hired pursuant to a contract that specifies the duration or limits the reasons for which an employee can be discharged, the employment is considered at-will and either party may terminate the relationship at any time for any reason. *Jenkins v. Boise Cascade Corp.*, 108 P.3d 380, 388 (Idaho 2005) (citing *Sorensen v. Comm Tek, Inc.*, 799 P.2d 70, 72 (Idaho 1990)). Employment is therefore presumed to be at-will, unless the parties "agree to a contract term limiting the right of either party to terminate the contract at will." *Atwood v. Western Const. Inc.*, 923 P.2d 479, 482 (Idaho App. 1996). Such a limitation on the right of either the employer or the employee to terminate the employment can be express or implied. *Sorensen*, 799 P.2d at 72.

**MEMORANDUM DECISION AND ORDER - 8**

An implied limitation occurs when a reasonable person could conclude, from all the circumstances, that both parties intended for either party's right to terminate the relationship to be limited by the implied-in-fact agreement. *Metcalf v. Intermountain Gas Co.*, 778 P.2d 744, 747 (Idaho 1989). An employer's policies and statements may give rise to an implied-in-fact agreement with an employee to limit how or when an employee may be discharged. *Bollinger v. Fall River Elec. Co-op, Inc.*, 272 P.3d 1263, 1269 (Idaho 2012). "However, such statements must be more than vague statements of opinion or prediction, and policies must manifest an intent that they become part of the employment agreement." *Id.* (citations omitted). Further, an implied-in-fact agreement must have consideration. *Wallis v. J.R. Simplot Co., Inc.,* Civil No. 91-0013, 1992 WL 613354, at *5 (D. Idaho Feb. 12, 1992), *aff'd on other grounds* 26 F.3d 135 (9th Cir. 1994).

Here, there is no dispute that Plaintiff's employment was at-will when he was hired in the fall of 2022. Plaintiff claims that Defendant altered the at-will nature of his employment through O'Gradney's "specific, limited promise" that Plaintiff's job would not be adversely impacted by IT2025. (Dkt. 25 at 6). Construing the facts in the light most favorable to Plaintiff, "adversely impacted" means either that Plaintiff would not be terminated in relation to IT2025, or that Plaintiff's position would not be eliminated in relation to IT2025.

In moving for summary judgment, Defendant contends there is no genuine dispute that Plaintiff's at-will employment was never modified. Defendant points to the at-will employment language in the offer letter, arguing it forecloses any inference that the

**MEMORANDUM DECISION AND ORDER - 9**

subsequent oral statements by O'Gradney amounted to an implied-in-fact contract term modifying the at-will nature of Plaintiff's employment. (Dkt. 21-1 at 6). Defendant contends that "a reasonable person – having first been advised in writing that their employment is *always* at-will and then having been verbally advised that *nothing is changing* except their manager – would not conclude their employer intended to change the at-will relationship." (Dkt. 21-1 at 7) (emphasis in original). Defendant also points to O'Gradney's and Plaintiff's undisputed testimony that neither contemplated or discussed the offer letter or at-will employment during the meeting. (Dkt. 21-1 at 5, 8–9; Dkt. 21-2 ¶¶ 39–40; Dkt. 21-7 at ¶ 11).

The Court finds Defendant has met its initial burden to show the absence of a genuine issue of material fact by pointing to evidence that shows a lack of intent by Defendant to alter the at-will employment relationship. The burden thus shifts to the Plaintiff to identify evidence giving rise to a genuine issue of material fact.

In responding to summary judgment, Plaintiff points to the context and circumstances surrounding the February 2023 meeting with O'Gradney to argue there is a genuine issue of material fact as to the existence of an implied-in-fact contract limitation on Defendant's ability to terminate Plaintiff in relation to IT2025. Plaintiff argues that because an implied-in-fact oral modification is determined based on an evaluation of all the circumstances, it is a question of fact for the jury and thus not for summary judgment. (Dkt. 25 at 17) (citing *Sorensen*, 799 P.2d at 73).

To demonstrate the existence of an implied-in-fact agreement, the facts must be

**MEMORANDUM DECISION AND ORDER - 10**

such that the intent of *both parties* to make the contract term may be fairly inferred.
*Atwood*, 923 P.2d at 484 (emphasis added). This is because an agreement is "a
manifestation of mutual assent on the part of two or more persons," and thus requires a
meeting of the minds. Restatement (Second) of Contracts § 3. Whether oral statements
amount to a promise of continued employment is a factual issue and ordinarily
determined by a jury. *Atwood*, 923 P.2d at 483 ("A distinction must be recognized
between promises and mere statements of opinion or prediction."). However, it is
appropriately decided as a matter of law if the evidence relating to the alleged promise is
not conflicting and permits but one inference. *Id.* (internal citations omitted).

In support of his implied-in-fact modification theory, Plaintiff's only evidence is
the language of the offer letter and his own interpretation of what transpired during the
meeting with O'Gradney. Plaintiff argues that the context of the conversation indicates an
implied-in-fact contractual limitation on the manner in which he could be discharged.
The parties do not dispute that the meeting was called by O'Gradney with the purpose of
relaying information about IT2025 to Plaintiff. Nor is it disputed that during the meeting,
Plaintiff raised concerns to O'Gradney about his job security due to his existing
obligation to relocate to Chicago. Plaintiff asserts that O'Gradney, as a vice president,
had apparent authority to promise him that IT2025 would not adversely affect his
employment, either because he would not be terminated in connection with IT2025, or
because his position would not be eliminated.

The offer letter clearly states that the Plaintiff's employment "is and at all times

**MEMORANDUM DECISION AND ORDER - 11**

shall be 'at will.'" (Dkt. 1-6). Nonetheless, Plaintiff argues that it does not preclude oral modification. (Dkt. 25 at 17). This is insufficient, as the language in the offer letter specifically negates any intention by Defendant to employ Plaintiff in any manner other than at-will. *See Moser v. Coca-Cola N.W. Bottling Co.*, 931 P.2d 1227, 1230 (Idaho App. 1997) ("An employee handbook or manual that expressly defines the relationship as at-will may negate a claim of intent to restrict the grounds for discharge."). Similarly here, the disclaimer in the offer letter expressly defines the relationship as at-will and evidences Defendant's intention not to limit either party's right to terminate the employment relationship.

In *Mitchell v. Zilog, Inc.*, the Supreme Court of Idaho held that a supervisor's statements that an employee would not be fired for signing a document did not transform the at-will nature of the employment, because it was disclaimed by the provisions in the employment guide. 874 P.2d 520, 525 (Idaho 1994). The Court held the supervisor did not impliedly limit the reasons the employee could be discharged. *Id.* Similarly, the offer letter here disclaims anything but at-will employment. O'Gradney's statements to Plaintiff that he would not be adversely affected in relation to IT2025 are not evidence upon which a reasonable person could conclude that Defendant was limiting its ability to terminate Plaintiff's employment at-will. O'Gradney did not promise Plaintiff that Defendant would employ him for any specific duration, regardless of performance, or agree to give Plaintiff advanced notice of termination. (Dkt. 21-2 ¶¶ 37–39).

Even if O'Gradney assured Plaintiff that he would remain employed through

**MEMORANDUM DECISION AND ORDER - 12**

IT2025, this was not a promise of future employment, but rather a statement of fact or prediction. O'Gradney communicated to Plaintiff that, based on the information and script O'Gradney had available, Plaintiff was not listed as an employee whose position was being eliminated in the IT2025 restructuring. Plaintiff has pointed to no facts indicating a manifest intention by both parties that O'Gradney's statements become part of the at-will employment agreement. And, as discussed, the offer letter expressly negates any such intention by Defendant. Therefore, Plaintiff has not pointed to evidence for a reasonable person to conclude that O'Gradney and Plaintiff had a meeting of the minds regarding limiting Defendant's ability to terminate Plaintiff at-will.

The Court is not required to adopt unreasonable inferences on summary judgment when the nonmoving party fails to point the Court to "specific facts," supported by evidence, with "reasonable particularity" that preclude summary judgment. *See Far Out Prods.,* 247 F.3d at 997; *McLaughlin*, 849 F.2d at 1209; *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). Further, the Court is not obligated "to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). Evidence relied on must be more than speculation to survive summary judgment.

Based on the foregoing, the Court finds Plaintiff has not met his burden of establishing a genuine issue as to the existence of an implied-in-fact contract modification. Plaintiff has pointed to no evidence establishing that both parties intended to limit the at-will employment contract to place limits on the reasons for termination.

**MEMORANDUM DECISION AND ORDER - 13**

The Court's analysis of summary judgment on Count One could end here, as a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 322–23. However, even if there were a genuine issue as to whether an implied-in-fact contract modified the at-will nature of Plaintiff's employment, the Court also finds that Plaintiff failed to adduce evidence giving rise to a genuine issue as to whether Defendant breached any such implied-in-fact contract, for the reasons discussed below.

### B.    Breach of Contract

Generally, a breach is defined by the terms of the contract. *See* Restatement (Second) of Contracts § 33(2). As discussed, Plaintiff claims that Defendant made a "specific, limited promise" that Plaintiff's position would not be "adversely impacted" by IT2025, meaning either that Plaintiff would not be terminated in relation to IT2025, or that Plaintiff's position would not be eliminated in relation to IT2025. (Dkt. 25 at 6). Thus, under the contours of the alleged promises, Defendant is in breach if it either fired Plaintiff in relation to IT2025 or eliminated Plaintiff's position in relation to IT2025.

In moving for summary judgment, Defendant asserts there is no genuine dispute that neither alleged promise was breached because Plaintiff was fired for poor performance and the position remains. In support, Defendant points to the following evidence: Plaintiff's own inconsistent testimony regarding the reason he was fired; the fact that Defendant listed Plaintiff as remaining employed in his same position on internal IT2025-related documentation; the fact that O'Gradney followed the script for employees

**MEMORANDUM DECISION AND ORDER - 14**

remaining employed during the February 2023 meeting; the fact that Lago told Plaintiff

he was being terminated for poor performance; Lago's documentation of poor

performance prior to the termination; and the fact that Plaintiff's position was filled

shortly after his termination. (Dkt. 21-1 at 10–11).

Defendant has met its initial burden to show the absence of a genuine issue of

material fact by pointing to evidence that shows both that Plaintiff was not terminated in

relation to IT2025, and that Plaintiff's position was not eliminated. Thus, to survive

Defendant's Motion for Summary Judgment, Plaintiff bears the burden of producing

"specific facts showing that there remains a genuine factual issue for trial and evidence

significantly probative" as to his claim that Defendant breached either alleged implied-in-

fact contract. *Prado v. Potlatch Corp.*, No. CV 05-256-C-LMB, 2006 WL 2597870, at *4

(D. Idaho Sept. 7, 2006) (quoting *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir.

1983)) (internal quotations omitted).

In response, Plaintiff points to three pieces of evidence to create a genuine issue of

breach: the "temporal proximity" between IT2025 and Plaintiff's termination; Plaintiff's

short tenure under Lago's supervision; and that Plaintiff's position was left open for

"extensive periods of time" following his termination. (Dkt. 25 at 6–8). The Court will

discuss below Plaintiff's evidence in the context of each alleged contract modification.

      i.    **The Promise that Plaintiff would not be terminated in relation to IT2025**

To establish a genuine dispute on the element of breach related to the first alleged

promise, Plaintiff first points to the "temporal proximity between IT2025 and the termination of [his] employment," noting the IT2025 restructuring, including his change in supervisor, occurred shortly before his termination on April 12, 2023. (Dkt. 25 at 6–7). Plaintiff, relying on his own deposition testimony, argues that the layoffs associated with IT2025 continued until March 24, 2023. *Id.* (citing Dkt. 25-1 ¶¶ 29-33, which itself cites to Dkt. 25-8 *Rabideau Dep.*, 133:8-19, 161:19-24). Defendant provides evidence negating Plaintiff's assertions that the IT2025 layoffs were ongoing when Plaintiff was terminated. (Dkt. 21-2 *Def.'s Statement of Facts* ¶¶ 20, 32; Dkt. 21-10 *Lago Decl.* ¶ 14; Dkt. 21-14 *Kornblut Decl.* ¶ 4).

Even construing the evidence in the light most favorable to Plaintiff and accepting his assertion that the layoffs continued until March 24, 2023, the evidence of temporal proximity is speculative and does not give rise to a reasonable inference that Plaintiff was terminated *because of* IT2025. Moreover, Plaintiff does not point to relevant precedent to establish temporal proximity is sufficient to allow a rational trier of fact to find in his favor.[4] Absent specific facts to allow the Court to make such a connection between the timing and the reason for his termination, Plaintiff's asserted inference is unreasonable.

Second, Plaintiff points to his short tenure working under Lago, noting that his

---

[4] Plaintiff cites to discrimination caselaw to argue he may rely on "very little" circumstantial evidence to survive summary judgment. (Dkt. 25 at 3–4). Plaintiff's claim is for breach of contract, not discrimination. *Id.* ("Admittedly, this case authority arises in the context of employment discrimination cases, and [Plaintiff's] case is not an employment discrimination case."). In any case, the low burden on summary judgment still requires Plaintiff to point to specific facts giving rise to a *reasonable* inference, even if the specific facts are based on circumstantial evidence. *See McLaughlin*, 849 F.2d at 1209; *Nelson*, 83 F.3d 1081–82.

**MEMORANDUM DECISION AND ORDER - 16**

pre-IT2025 supervisor O'Gradney, did not terminate his employment or note issues with his performance that Plaintiff was aware of. *Id.* Defendant argues "that Lago was the only changed variable underscores that Lago's performance concerns – not IT 2025 – caused [Plaintiff]'s termination." (Dkt. 26 at 5).

While the fact that Plaintiff had not been disciplined by O'Gradney prior to his termination supports a conclusion that the reason Plaintiff was fired was not for some ongoing performance issue, it does not support a conclusion that Plaintiff was fired in connection with IT2025. Plaintiff offers no evidence connecting the short period of time working under Lago to his theory that he was fired pursuant to IT2025.

Third, Plaintiff claims his position was left open for "extensive periods of time after he was terminated," until it was filled on August 14, 2023. (Dkt. 25 at 7-8). Plaintiff asserts that this disputed fact is indicative of Defendant not being "overly concerned with filling [Plaintiff]'s role, which is more consistent with a job made redundant as part of a major departmental reorganization." (Dkt. 25 at 8). Defendant refutes this argument by pointing to evidence that the position was filled just after Plaintiff's termination by an independent contractor, before the position was officially filled by the same individual on August 14, 2023. (Dkt. 26 at 5). Defendant asserts Plaintiff's argument to the contrary is frivolous and "layers speculation upon deception" by cherry-picking the record to rely on the official hire date rather than undisputed testimony that the individual began working as an independent contractor just after Plaintiff's exit. (Dkt. 26 at 5).

At oral argument, Plaintiff pointed to Defendant's Response to Plaintiff's

**MEMORANDUM DECISION AND ORDER - 17**

Interrogatory Number Fifteen as further evidence the position was left open after his termination. There, Plaintiff requested Defendant "list all <u>employees</u> who have held [Plaintiff's] position/role with [Defendant] since his termination date." (Dkt. 25-5) (underline added). In response, Defendant stated "Evan Alonso was hired to fill [Plaintiff's] position on August 14, 2023." *Id.* Defendant argues the interrogatory responded specifically regarding official *employees*, and points to Lago's declaration where he states the position was filled by an independent contractor just after Plaintiff's termination, and the independent contractor was hired as an employee on August 14, 2023. (Dkt. 21-10 ¶ 13).

Plaintiff's theory that his position was not immediately filled and is therefore more indicative of a position made redundant as part of IT2025 is not sufficiently supported by the record. Even accepting Plaintiff's assertion that the position was vacant for a few months, this does not support the conclusion that Plaintiff was terminated in relation to IT2025. Rather, it reflects that the position remained and that it was eventually filled. While the Court is required to draw inferences in Plaintiff's favor, such inferences must be reasonable. *McLaughlin*, 849 F.2d at 1209. Plaintiff's own speculation to connect his theory to the evidence is insufficient at summary judgment to create a genuine issue of material fact.

Finally, Plaintiff spends most of his brief attempting to rebut Defendant's proffered explanation for his termination – poor performance – as pretextual. Plaintiff misunderstands his burden on summary judgment. As discussed, to survive Defendant's

**MEMORANDUM DECISION AND ORDER - 18**

Motion for Summary Judgment, Plaintiff bears the burden of producing sufficient evidence supporting his claim that the reason he was fired was in connection with IT2025. Rather than pointing to sufficient evidence to support this claim, Plaintiff instead argues that he was *not* fired for poor performance. Even accepting Plaintiff's argument as true, that he was not fired for poor performance, this is insufficient for a rational trier of fact to conclude that he was instead fired because of or in relation to IT2025.

Taken together, the evidence pointed to by Plaintiff falls short of his burden at summary judgment. Plaintiff has not pointed to specific facts demonstrating there is a genuine dispute regarding whether he was terminated in relation to IT2025.

> ### ii.    The Promise that Plaintiff's position would not be eliminated in relation to IT2025

There is no genuine dispute that the second alleged promise, that Plaintiff's position would not be eliminated in relation to IT2025, was not breached. At oral argument, Plaintiff conceded that the position remained with Defendant following the expiration of the IT2025 restructuring. By acknowledging that Plaintiff's position remained with Defendant, Plaintiff concedes that Defendant did not breach the "limited, specific promise" that his position would not be eliminated in connection with IT2025.

Because Plaintiff cannot establish the first or the second element of a prima facie case of breach of contract, his claim fails. *Celotex,* 477 U.S. at 322–23 ("The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to

**MEMORANDUM DECISION AND ORDER - 19**

which [he] has the burden of proof."). The Court need not address the remaining elements of Plaintiff's breach of contract claim. Accordingly, the Court will grant Defendant's Motion for Summary Judgment as to Count One of the Complaint.

**2.    Count Two: Breach of the Implied Covenant of Good Faith and Fair Dealing**

Plaintiff argues that by terminating his employment without explanation after he sold his house on the same day he was relocating to Chicago, Defendant breached the covenant of good faith and fair dealing. Defendant argues that, absent an enforceable contract or a breach thereof, there cannot be a breach of the covenants.

The "[c]ovenant of good faith and fair dealing ... is implied in all contracts, including those for employment-at-will." *Cantwell v. City of Boise*, 191 P.3d 205, 213 (Idaho 2008). The Idaho Supreme Court has held that "'[a]ny action by either party which violates, nullifies or significantly impairs any benefit of the employment contract is a violation of the implied-in-law covenant.'" *Sorensen*, 799 P.2d at 75 (quoting *Metcalf,* 778 P.2d at 749). The covenant, however, "does not create a duty for the employer to terminate the at-will employee only for good cause." *Prado*, 2006 WL 2597870, at *10 (quoting *Jenkins*, 108 P.3d at 390). Rather, the "covenant simply requires that the parties perform in good faith the obligations imposed by their agreement." *Id.* (internal citations omitted). "Thus, before a party can breach this covenant there must be a contract." *Silicon Intern. Ore, LLC v. Monsanto Co.*, 314 P.3d 593, 607 (Idaho 2013). "A violation of the implied covenant is a breach of contract. It does not result in a cause of action separate from the breach of contract claims, nor does

**MEMORANDUM DECISION AND ORDER - 20**

it result in separate contract damages unless such damages specifically relate to the breach of the good faith covenant." *Saint Alphonsus Diversified Care, Inc. v. MRI Assocs.*, *LLP*, 334 P.3d 780, 794 (Idaho 2014) (quoting *Idaho First Nat. Bank v. Bliss Valley Foods, Inc.*, 824 P.2d 841, 864 (Idaho 1991)).

As previously decided, Plaintiff has not established a genuine issue regarding a breach of either alleged implied-in-fact contract. Absent a breach of contract, this claim cannot stand. *Id.* As discussed herein, Plaintiff was an at-will employee. Viewing the facts in the light most favorable to Plaintiff, the only alleged wrongdoing is Defendant's termination of Plaintiff without notice after a short tenure under Lago. However, Defendant could terminate Plaintiff's at-will employment at any time without notice. Thus, Plaintiff has not clearly identified a contractual duty that Defendant failed to perform in good faith. Accordingly, the Court will grant Defendant's Motion for Summary Judgment as to Count Two of the Complaint.

### 3.    Count Three: Promissory Estoppel

Plaintiff claims he detrimentally relied on Defendant's promise that he would not be adversely impacted by IT2025. (Dkt. 25 at 17–19). Plaintiff asserts that, absent the promise, he would have remained in Idaho, sought other employment, and would not have moved forward with his relocation to Chicago. *Id.*

Under the doctrine of promissory estoppel, a "promise which the promisor should reasonably expect to induce action or [forbearance] on the part of the promisee or a third person and which does induce such action or [forbearance] is binding if injustice can be

avoided only by enforcement of the promise." *SilverWing at Sandpoint, LLC v. Bonner Cnty.*, 435 P.3d 1106, 1115 (Idaho 2019) (quoting *Smith v. Boise Kenworth Sales, Inc.*, 625 P.2d 417, 421–22 (Idaho 1981), and Restatement (Second) of Contracts § 90(1) (1973)). A plaintiff must prove four elements to succeed on a promissory estoppel claim: "(1) reliance upon a specific promise; (2) substantial economic loss to the promisee as a result of such reliance; (3) the loss to the promisee was or should have been foreseeable by the promisor; and (4) the promisee's reliance on the promise must have been reasonable." *Id.* (quoting *Zollinger v. Carrol*, 49 P.3d 402, 404 (Idaho 2002)). Promissory estoppel is a substitute for consideration, "not a substitute for an agreement between parties." *Knudsen v. J.R. Simplot Co.*, 483 P.3d 313, 326 (Idaho 2021) (quoting *Profits Plus Cap. Mgmt., LLC v. Podesta*, 332 P.3d 785, 803 (Idaho 2014)). "Thus, where there is evidence of adequate consideration, the doctrine of promissory estoppel is of no consequence." *Id.*

As discussed in depth in the analysis of Count One, Plaintiff has not pointed to evidence giving rise to a reasonable inference of an implied-in-fact modification of Plaintiff's at-will employment. That Plaintiff relied to his detriment on what he subjectively believed was a promise of continued employment does not establish that his reliance was reasonable or foreseeable in the face of the explicit at-will provision of his offer letter. Further, the alleged economic loss Plaintiff sustained by selling his house to relocate was not a result of any new promise, but instead was a result of his original agreement in the offer letter. Plaintiff's employment was at all times at-will, and he knew

**MEMORANDUM DECISION AND ORDER - 22**

in accepting the position that he had to relocate to Chicago. Plaintiff has pointed to no facts or caselaw to establish a genuine issue on this claim. The Court is sympathetic to the unfortunate circumstances of Plaintiff's termination. However, the Court is obligated to apply the law to the facts of each case, regardless of the sympathetic circumstances.

Accordingly, the Court will grant Defendant's Motion for Summary Judgment as to Count Three of the Complaint.

## **ORDER**

NOW, THEREFORE IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (Dkt. 21) is **GRANTED**.

DATED: October 15, 2025

Honorable Debora K. Grasham
United States Magistrate Judge